## CHARLES F. INGALLS *vs.* WILLIAM P. BAKER.

Intoxicating liquors are not liable to be seized on execution, under the statutes of this commonwealth.

HOAR, J. This is an action of tort, in which the plaintiff seeks to recover the value of seventy-three barrels of spirituous and intoxicating liquors, the property of the plaintiff, and converted by the defendant to his own use. The defendant is a deputy sheriff of the county of Suffolk, and justifies the taking the liquors upon several writs of attachment against one S. C. Dore, of Cairo, Illinois, who, as he alleges, and as the jury have found, conveyed them to the plaintiff by a sale in fraud of his creditors.

Among other instructions which were asked by the plaintiff at the trial was this: " that spirituous and intoxicating liquors are not attachable in this commonwealth, and therefore a writ of attachment is no justification to an officer for taking such property." The presiding judge refused to instruct the jury as thus requested, but instructed them that if the sale from Dore to the plaintiff was fraudulent as against the creditors of Dore, the writs which were given to the defendant for service would justify his attachment. The correctness of these rulings is now before us for decision.

By the Gen. Sts. *c.* 123, § 32, it is provided that all goods and chattels, liable to be taken on execution, except such as from their nature or situation have been considered as exempt at common law, may be attached. In *c.* 133, § 29, it is enacted that " all chattels, real or personal, and all other goods which by the common law are liable to be taken on execution, may be taken and sold thereon, except as is otherwise provided in this chapter." By §§ 34 to 40 of the same chapter, goods seized on execution must be sold at public auction by the officer, and the proceeds applied to paying charges and satisfying the execution.

There can be no doubt that spirituous and intoxicating liquors are property in this commonwealth, and they are not directly

exempted from seizure on execution. But as the only purpose for which they can be attached or taken on execution is that they may be sold by the officer, within his precinct, in order to satisfy the execution, it must follow that, if the sale is prohibited by law, the taking them is also forbidden by implication.

By Gen. Sts. *c.* 86, § 28, it is enacted that no person shall manufacture for sale, or sell by himself, his clerk, servant or agent, directly or indirectly, any spirituous or intoxicating liquor unless authorized as provided in that chapter. The chapter con tains no authority for sales by officers, in pursuance of legal process. The provisions of this chapter and of *c.* 133 are therefore in literal conflict; but, being found in the same body of laws, enacted at the same time, one provision must be construed as an exception to the general language used in the other; and it is the duty of the court to ascertain, if possible, what was the intention of the legislature, and which of them it was designed should have the more full and complete operation.

If they were found thus enacted for the first time, and there were nothing in the history of previous legislation to aid us in construing them, the argument for the defence would certainly be very strong. It is the general policy of our laws to make the whole property of a debtor applicable to the payment of his debts, and to except only such things as are essential to his support and that of his family, for the humane purpose of saving them from utter destitution and suffering. In addition to this, there are undoubtedly many considerations of a practical nature, which might lead us to doubt whether the legislature, in the use of general and sweeping terms of prohibition, intended that they should be taken in their literal and absolute sense, especially when they would thus come in conflict with other reasonable and important rules for the regulation and management of property. And we do not overlook the sugges-tions, made by counsel, of the peculiar and inconvenient results which may follow from the rigid application of the prohibitory language of the statute regulating the sale of spirituous and intoxicating liquors. Thus, if liquors are property, can an in-solvent debtor possess any quantity of them, however large, and

yet escape all liability to his creditors ? If he is sued, and they cannot be taken on execution, and he is arrested, can he take the oath for the relief of poor debtors, and still retain them ? Would they pass to his assignee in insolvency ? or, in case of his death, to his administrator? As property, they are subject to taxation. But how can the collector of taxes take them ? He cannot arrest the delinquent tax-payer, if he turns out to him sufficient personal property to satisfy the tax ; and he cannot take liquors if he cannot sell them. Perhaps the answer to the case supposed of an administrator or assignee in insolvency would be, that he might send the liquors out of the state for sale ; but the tax collector, the constable, and the sheriff, can only act within his precinct.

It must, however, be borne in mind, that supposed inconveniences attending the execution of a law which the legislature have the power to enact do not concern the judicial department of the government. They are to be regarded by the courts only so far as they may aid in ascertaining the legislative will. And, upon a full examination of the question, we are led to the conclusion that it was the intention of the legislature to prohibit the sale of spirituous and intoxicating liquors by officers intrusted with the service of executions, as much as by other persons not thereto expressly authorized in the statute regulating the traffic in those liquors. The debtor could not sell the liquors to his creditor in payment of his debt; nor sell them to others in this commonwealth, to obtain the means of payment, without a violation of law ; and the officer is merely the instrument of the law to compel the application, to the satisfaction of the creditor's demand, of property which the debtor would not voluntarily apply.

The history of the legislation upon the subject is still more decisive. The *St.* of 1852, *c.* 322, prohibited the sale of intoxicating liquors by all persons not authorized under the provisions of that act; and there was no exception in it of sales under judicial process.

In March 1854 the sheriff of Norfolk county was convicted before a justice of the peace of a violation of that statute, and

committed to jail. He applied to this court to be discharged on *habeas corpus,* alleging that the sale of which he was convicted was a sale at auction by virtue of an execution committed to him for service, on which he had seized and sold the liquor which was the property of the execution debtor. It was held that the question of the lawfulness of the sale was not open upon the *habeas corpus,* and he was discharged on other grounds. *Adams* v. *Vose,* 1 Gray, 51. But immediately after the decision, in April 1854, a statute was passed which excepted from the prohibitions of the act of 1852 sales at auction by sheriffs, deputy sheriffs, constables, coroners, executors or administrators, and assignees in insolvency, made in pursuance of a judgment, decree or warrant from a court of competent jurisdiction. *St.* 1854, *c.* 400.

The supreme court of Maine in the year 1853 had decided, under a statute very similar to the Massachusetts act of 1852, that spirituous and intoxicating liquors could not be taken in execution. *Nichols* v. *Valentine,* 36 Maine, 322.

In 1855 a new statute was passed by our own legislature, substantially the same in its provisions with *c.* 86 of the Gen. Sts., and repealing all acts and parts of acts inconsistent with it. It contained no exception of sales made by the persons named in the act of 1854. In 1859 the commissioners to revise the statutes embodied in their report the statute of 1855, omitting all reference to the statute of 1854, and including none of its provisions; it was adopted as a part of the Gen. Sts. in the same form; and by Gen. Sts. *c.* 182, the statute of 1854 was named among the acts expressly repealed.

And it is noticeable, as an indication that the necessity of exempting officers from a general prohibition, which might otherwise apply to them, did not then escape the attention of the legislature, nor of the commissioners, that, in the chapter of the Gen. Sts. which imposes a penalty for sales at auction by any person not licensed as an auctioneer, is an express exception of sales by sheriffs, deputy sheriffs, coroners, constables, collectors of taxes, executors, administrators, guardians, assignees of insolvent debtors, and other persons required by law to sell real or personal estate. Gen. Sts. *c.* 50, § 10.

This review of the statutes shows that the omission to except sales on execution from the prohibition to sell liquors except in the manner authorized by Gen. Sts. c. 86, was not by inadvertence, but by design.

The exceptions taken by the plaintiff are therefore sustained, and a new trial granted. The defendant could of course have no better right to take the liquors from the fraudulent vendee of Dore than he had to take them from the vendor. The sale to the plaintiff passed the property to him, subject only to be divested when lawfully taken to be applied in satisfaction of a judgment obtained by a creditor of the fraudulent vendor.

*Exceptions sustained.*

*T. M. Hayes,* (*C. C. Dame* with him,) for the plaintiff.
*T. H. Sweetser,* for the defendant.